# Adams' Administrator v. Callis & Hughes.

(Decided March 13, 1934.)

R. F. PEAK and MOSLEY & MOSLEY for appellant.

J. WIRT TURNER for appellee.

·OPINION OF THE COURT BY JUDGE RATLIFF—Affirming.

Irvine Adams, administrator of the estate of Chester Adams, deceased, instituted this suit in the Trimble

circuit court against Callis & Hughes, a partnership, to recover for the death of his decedent, Chester Adams, who was killed by a rock thrown from a blast set off in a rock quarry. The facts are these:

The deceased and Callis & Hughes, defendants below, were each owners of a rock quarry in Trimble county, Ky., from which quarries the respective parties were engaged in procuring rock to be sold to the state highway commission for road construction purposes. The quarries were located from 50 to 250 yards apart; i. e., about 50 yards from the nearest points, and about 250 yards to the extreme points. The quarries were located at the foot of opposite hills facing each other and separated by a small branch, trees, and other undergrowth. The method adopted by each quarry to produce the rock from the quarries was that of blasting by the use of dynamite and other explosives. Owing to the close proximity of the quarries to each other, when either party set off a blast it would throw rocks and other missiles and debris onto the other quarry, and, to guard against the dangers incident thereto, the owners and employees of each quarry established a rule and understanding that, when either party was ready to set off a blast, it would give warning to the other party by hollering "fire in the hold" or "fire." It was understood by the parties that the blast would not be set off until an answer was received from the other party to the effect that they were ready.

On June 15, 1932, Adams, decedent, went to the Callis & Hughes quarry to get an auger, and while there he learned that they were going to make a blast soon. On return to his quarry, he told one of his employees to dig around the side of a tree so they could shoot when they got through over there, that they (meaning the other quarry) were going to shoot.

Soon thereafter the Callis & Hughes quarry gave the usual warning that they were ready to set off the blast. The blast was set off, and threw large quantities of rock and other missiles onto the quarry and premises of Adams, who was struck by a rock, resulting in his death

Appellant, plaintiff below, grounded his suit on negligence, alleging that "on June 15, 1932, through the gross negligence and carelessness of the defendants, their agents, servants and employees in firing a blast in

which they used dynamite or some other powerful explosive, did so negligently and with gross negligence and carelessness operate said blast, that rocks and other debris were thrown on the land, premises and rock quarry of plaintiff's decedent, and one of said stones or rocks struck decedent upon the head with such force and violence that it caused his death shortly thereafter. * * *"

Defendants filed their answer in which they denied the allegations of negligence, and further pleaded in separate paragraphs contributory negligence and assumed risk. A demurrer was filed, and overruled, to the plea of assumed risk. Appellee insists that the demurrer should have been sustained, because such plea applies only as between master and servant, and that that relation did not exist between the parties herein.

The term "assumed risk" is more generally used as between master and servant, but the courts do not confine it to its technical application. In the case of Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077, 1078, this court said:

"In view of the fact that the doctrine of assumed risk is not based entirely on contract, but grows out of the application of the maxim, 'volenti non fit injuria,' it is well settled that, independently of the relation of master and servant, there may be a voluntary assumption of the risk of a known danger which will debar one from recovering compensation in case of injury, even though he was in the exercise of due care,"

and citing Miner v. Conn. River R. Co., 153 Mass. 398, 26 N. E. 994; Ind. Nat. Gas & Oil Co. v. O'Brien, 160 Ind. 266, 65 N. E. 918, 66 N.E. 742; Wood v. Locke, 147 Mass. 604, 18 N. E. 578. See, also, 38 Cyc. p. 532; Stellar v. Sclarenco, 249 Ky. 328, 60 S. W. (2d) 946.

In the circumstances, the court did not err in overruling the demurrer to the plea of assumed risk.

The issues were made and the case tried to a jury and resulted in a verdict and judgment in favor of appellees, defendants below. This appeal results.

As grounds for reversal appellant insists: (1) That, after appellee gave warning that the blast was about to be set off, it did not give deceased and his men time to

reach points of safety or protection, between the time of giving the warning and setting off the blast; (2) that the blasting of the rock onto the premises of deceased was a trespass, and appellee is responsible for the results, regardless of negligence. On the other hand, it is insisted for appellee that the trespass rule does not apply to this case because of the understanding and consent of the respective parties that they would operate and conduct the work in the manner which they did, and guard against the dangers incident thereto by giving each other warning, and they thereby assented and acquiesced in the conduct of the work, and because of this assent and agreement no trespass could result from the blast of the respective parties by throwing rocks or other missiles onto the premises of the other party.

1. Respecting the sufficiency of the warning given by appellee to deceased and his men, it is argued for appellee that it gave timely warning according to their custom and understanding, before setting off the blast, and that deceased had ample time to reach a point of safety, but refused or neglected to do so and remained in the open, thereby voluntarily assuming the risk incident to the blast.

As to the time given between the warning of the blast and the time of setting it off, the evidence is somewhat conflicting. Some of the witnesses testified that the warning was not given in time for them to reach places of safety, but a number of other witnesses introduced for plaintiff, who were deceased's employees, testified that decedent went a certain distance from his quarry after the warning was received, and sat down on a rock, while a number of his employees went to more distant points and took shelter under objects sufficient to protect them. Ernest Barnes stated that Mr. Adams, the deceased, passed him and went on down the point after they hollered "fire." Barnes, at this time, had reached a point of safety under a tree. Alfred Jones stated that he did not have time to get to cover, and was standing by decedent, but on cross-examination he was asked this question:

"Did you tell Mr. Clem a few days after the death of Mr. Adams, that you heard Mr. Adams say 'Alright' and that Mr. Adams told you and some of the other boys to stand out in the open? A. I told him that, yes, sir."

Lem Garrett stated that Mr. Adams sat down on a rock and said: "Alright, everybody, ready." Nolon Boatright, another employee of Adams, stated that Mr. Adams said: "Boys, come on out in the open." R. C. Boatright also stated that Adams said: "Come on out in the open so you can see."

On cross-examination the same witness was asked this question:

"Did you hear any body holler 'Alright'? A. Yes, sir.

"Q. Who? A. Mr. Adams."

Omar Whitaker testified that he passed Mr. Adams sitting on a rock and went 25 yards further on and got behind a tree.

It is our view that the evidence is sufficient to warrant the conclusion that the deceased had time and opportunity to reach a place of safety after the warning of the blast was given, but voluntarily remained in the open.

2. It is a rule in this state that, where blasting operations result in a direct trespass upon the premises of another by casting rock or other material thereon, resulting in an injury, the liability of the person causing the injury is absolute, and he must respond in damages, irrespective of the question of negligence or want of skill. In Allegheny Coke Co. v. Massey, 163 Ky. 792, 174 S. W. 499, 500, it is said:

"The reason for the rule is, that unless a party can show a right, either in the nature of a presumed grant or easement, or in some other mode, to use his property in a particular way, he cannot use it in that partciular way if it occasions injury to his neighbors, in the quiet enjoyment of their legal rights and privileges. * * *"

The question here to be determined is whether or not, in the peculiar circumstances of this case, the act of appellee in blasting or throwing the rocks upon the premises of appellant's decedent was a trespass. To enter or otherwise invade the premises of another by authority or permission of the owner or person in possession is not a trespass. To commit a trespass upon the premises of another, the entry must be unauthorized.

In the case at bar, it is conceded that the deceased

and the owners of the other quarry, Callis & Hughes, had an understanding and agreement that each party could operate its quarry in the manner which they were operated, by the use of explosives to remove the rock from the quarry. The agreement and understanding was evidence of their recognition of the dangers incident thereto. Both parties had acquiesced in this method of operation for a considerable period of time previous to the accident complained of. They knew that the blasts from the respective quarries threw rocks upon the other quarry, and by their agreement and understanding each party at least impliedly, if not expressly, consented and agreed that they may blast rocks upon the premises of each other, which was a natural result due to the very nature of the work. It follows then that the entrance of each other's premises by the blasting of the rocks was by mutual consent of the respective parties, and therefore no trespass could result. The gravamen of trespass is a lack of authority to commit the act.

For reasons above stated, it is our conclusion that the act of appellee under the circumstances does not come within the general rule of trespass as enunciated in the cases relied on by appellant. In those cases the act was without authority and unauthorized by the injured party.

Next, it is insisted that instruction No. 5 is erroneous. The instruction reads:

"Although they may believe the defendants were negligent as set out in instruction number one, yet if you believe decedent Chester Adams, knew the dangers incident to the blasting of rock, and at the time of the blast causing his death, he was notified that the blast would be made in time for him to seek cover or protection and failed to do so, but voluntarily remained in the open, he assumed the risk incident thereto and the law is for the defendant and you should so find."

It is our view that the above-quoted instruction is substantially correct. It authorized the jury to find for defendants if it believed from the evidence that deceased was notified that the blast would be made "in time for him to seek cover or protection" and failed to do so, but voluntarily remained in the open. This instruction was authorized by both the pleadings and the

evidence. The evidence strongly conduces to show that deceased had time to reach a place of safety but remained in the open, and, according to the undisputed evidence of a number of witnesses, he announced to appellees that "all was ready" before the blast was fired.

In the circumstances, it is immaterial whether the death of deceased was the result of contributory negligence or assumed risk. Indeed, it might be said that it was the combination of both. Under certain circumstances, the conduct of a person may partake of the elements of both assumed risk and contributory negligence. In the instant case it might be said that the deceased was guilty of contributory negligence in failing to observe ordinary care for his own safety and also assumed the risk of a known danger by voluntarily remaining in the open.

The evidence is sufficient to sustain the verdict of the jury and we are unauthorized to disturb it.

Perceiving no error prejudicial to the substantial rights of appellant, the judgment is affirmed.