## Columbia Amusement Co. v. Settle.

Feb. 9, 1943.

188

Wheeler & Shelbourne for appellant.

Holland G. Bryan and Roy G. Garrison for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellee, Mrs. E. G. Settle, sustained an injury to her left leg as she and her husband were descending the stairs in an aisle of the balcony of one of the Columbia Amusement Company's theaters in Paducah on the afternoon of February 1, 1941. She recovered a judgment of $7,350. The principal ground urged for a reversal of that judgment is that the Company was entitled to a peremptory instruction. Being of the opinion that that position is well taken, we shall confine our consideration of the case to that question.

Mr. and Mrs. Settle went to the picture show early in the afternoon, and purchased balcony seats. When they reached the main aisle, which extends across the balcony, an usher showed them to seats about midway of the balcony. When the show was over, and during a brief period, referred to as an intermission, when the lights were turned on, the Settles got up to leave the theater. As to how she fell, Mrs. Settle said:

"Well, after the show was over and we got up to leave, and of course the lights came on, and as I was coming down, I had taken it seems to me like a few steps and had gotten on this wide—what I would call a landing, because I could tell in the steps, I could tell in the steps that I had taken that it was wider than the other steps, and when I stepped off of that was when I fell there."

On cross-examination she said:

"I will just tell the jury that I couldn't see the steps, when I started down it seemed like the light was in such a direction that I couldn't see the steps enough to keep from missing one or stumbling over one or slipping or whatever I did."

Mr. Settle testified that he had his hand on his wife's right arm and that she did not fall until they had taken several steps down the aisleway. He said also that he

did not know what caused Mrs. Settle to fall, and that she tripped him as she attempted to make a step. Both of the Settles testified that the lighting in the theater was such that they could not see the steps. Mrs. Settle said that she had attended the Columbia theater on infrequent occasions over a period of 15 years.

The charges of negligence were that the balcony steps had been carelessly and negligently built in such a way that the risers therein were very high and the treads very narrow, thereby making them dangerous for persons going up and down the stairway, and that the lights along the way were so carelessly and negligently arranged as to make the balcony steps dark and dimly lighted, thereby preventing persons using them from seeing clearly.

The appellee did not offer any testimony relating to defects in the construction or the lighting of the steps. The substance of the Settles' testimony was that there were wide steps or landings where the rows of seats were placed, and that there were very narrow and steep steps leading to the wide steps. As to the lighting, they said that they started to leave when the lights came on at an intermission, but the lighting was not sufficient for them to see the steps as they were going down them.

The Company offered proof to the effect that the steps were of standard construction and of the type generally found in the balconies of theaters. They showed also that the lighting was up to the standard found in theaters generally, and that the lighting apparatus and arrangement were the best known to lighting engineering. There was a hooded light on the end of every other row of seats on each side of the aisle in order that the lights would be reflected along the aisle. The testimony as to the type of construction of the steps was that all of the risers were uniform in height, but that there was a wider step at each row of seats—the narrower steps leading up to the next row of seats. There was testimony for the Company also that the Settles started to leave during an intermission and that the aisle lights were on when they fell.

Both parties stress the recent case of Columbia Amusement Company v. Rye, 288 Ky. 179, 155 S. W. (2d) 727, 728. The plaintiff in that case sustained an injury when she left a seat she was occupying in the first row

of the balcony and stepped on to the cross aisle in the Arcade theater in Paducah, which is also owned by the Company in the case at bar. The platform on which the first row of seats was placed was some 7 inches above the cross aisle, and there was only a 13-inch space between the edge of the platform and the front of the seat. In commenting upon that situation we said:

"* * * Thus it is readily conceivable that one attempting to leave his seat in the front row of the upper section of the balcony, unconscious of the elevation of the platform above the aisle, might inadvertently step over the edge of the platform into the aisle and be thrown to the floor. * * *"

There were no lights along the platform in question in the Arcade Theater, and the plaintiff was occupying a seat at about the middle of the section, so it can be seen that the aisle lights, which were similar to the ones in the case at bar, furnished her little aid. Incidentally, it was brought out in the testimony in the case at bar that the aisle lights in the Columbia theater are as good or better than those in the Arcade. It is interesting to note also that it was said in the Rye case:

"* * * Had appellee been injured in ascending or descending the aisles, we would be compelled to hold that the accident could not be attributed to insufficient lighting. * * *"

On the question of the proof of standard construction and lighting as a complete defense, it was said in the Rye case:

"* * * And thus we are confronted with the necessity of accepting as conclusive the uncontradicted testimony of the architect who designed the balcony, the lighting expert, and others, that the lighting of the balcony was more than sufficient considering the need of darkness during the display of films, and that the balcony was of standard and approved construction, or of holding that the combination of the elevated platform without a guard rail separating it from the aisle and the absence of floor or aisle lights in the cross aisle, created a situation, the preventability and danger of which, laymen were competent to decide. We prefer to adopt the latter course as more consistent with reason and the practical ad-

ministration of justice, since, after all, lights, plat-
forms, railings, and seats in theaters are within the
observation and experience of ordinary men and
require no special study to determine whether their
arrangement in a particular combination constitutes
a hazard to the public.''

But that opinion points out also that the testimony show-
ed that there could be no uniform or standard construc-
tion of the interior of a balcony in a theater because its
length and width would necessarily determine the ar-
rangement and elevation of the aisles and seats.

In the case at bar there is no such proof; nor are
we confronted with a situation similar to the one in the
Rye case. Here the plaintiff was injured while she was
proceeding down a darkened stairway shown to be of
standard type and construction and lighted by the best
known lights designed for such a purpose. This is not
an instance of a sudden fall sustained as one was at-
tempting to leave a seat in a darkened theater (Colum-
bia Amusement Co. v. Rye, supra; Magruder v. Colum-
bia Amusement Co., 218 Ky. 761, 292 S. W. 341), but
rather, as shown by the testimony of both Mr. and Mrs.
Settle, one where the injured party started down the
steps at an intermission when the lights were on in the
theater and had taken several steps down the way before
she fell. Not only had the Settles gone up the stairway
to their seats, but they had had an opportunity to see it
when they started to leave the balcony, and had gone
down several steps before the time of the accident.

It is unnecessary for us to decide, in a case such as
this, whether the uncontradicted testimony as to the
standard construction of the aisleway and the lighting
arrangement therefor would constitute a complete de-
fense for the Company, in view of what we have already
said as to the manner in which Mrs. Settle sustained her
injury. Clearly, this is a case such as we had in mind
when we said in the Rye case:

''It is true that the doctrine of assumed risk is not
limited in its application to cases arising between
master and servant (Adams' Adm'r v. Callis &
Hughes, 253 Ky. 382, 69 S. W. (2d) 711); and it is
probably correct to say that a patron of a moving
picture theatre of standard construction entering or
departing while the theatre is necessarily darkened,

assumes the risk of the generally known danger of ascending or descending steps dimly lighted as contrasted with the degree of illumination ordinarily found in places where darkness is not required. Cases from other states supporting this view are cited by counsel in their able brief. But the doctrine of 'Assumed Risk,' at least to the extent which we deem it applicable, presupposes knowledge on the part of the injured person of the existing danger, or at least, of the existence of the physical object, which, if not carefully approached or utilized, might cause that danger. In other words, one must know of the existence of steps, or at least be afforded the means of obtaining that knowledge before he can be said to have assumed the risk of ascending or descending them while they are insufficiently lighted. * * *''

Mrs. Settle sustained her injury through no fault of the Company. Not only did she know of the existence of the steps, but she had actually gone down several of them before she fell. While she started down the steps when the lights were on at intermission, it was her duty to continue down them when the lights, other than the aisle lights, were turned off (if they had been at the time of her accident), with due regard for her own safety. Anyone who attends picture theaters is aware of the danger in ascending or descending dimly lighted steps while pictures are being shown. In a case where there is no showing of a defect in the steps, or in the lighting arrangements designed for their use, or other negligence on the part of the operator of the theater, such as is true in this case, we fail to see how it can be contended seriously that a party who is injured while ascending or descending the stairs is entitled to have his case submitted to the jury. See Loew's Nashville & Knoxville Corporation v. Durrett, 18 Tenn. App. 489, 79 S. W. (2d) 598, a case similar to the one before us, wherein the plaintiff was denied relief.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.