VIVIAN G. LANDRUM, APPELLEE, V. RUTH RODDY, APPELLANT.
12 N. W. (2d) 82

FILED NOVEMBER 26, 1943. No. 31594.

*Stiner, Boslaugh & Stiner,* for appellant.

*Blackledge & Conway, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL and WENKE, JJ.

WENKE, J.

This action was commenced in the district court for Adams county by Vivian G. Landrum, as plaintiff, to recover damages for personal injuries received in an accident occurring while riding as a guest in the car of Ruth Roddy, also known as Ruth Roddy Wood, defendant, who she alleged caused the accident by operating her car in a grossly negligent manner. Upon the issues joined the matter was submitted to the jury and verdict being rendered in favor of the plaintiff and judgment entered thereon, the defendant appeals.

For the purpose of this record the plaintiff, Vivian G. Landrum, will be referred to as the appellee and the defendant, Ruth Roddy Wood, will be referred to as the appellant,

While the issues presented by the pleadings contain the question of the defendant's liability under the guest statute for injuries caused by appellant driving her car while being under the influence of intoxicating liquor, however, there is no evidence to sustain this allegation and the trial court was correct in not submitting that question to the jury. This, of course, does not affect the evidence of her

drinking with reference to the question of whether or not she was guilty of gross negligence.

The pleadings admit that the accident complained of happened on the 26th day of September, 1941, at about 9:00 p. m. while appellee was riding as a guest of the appellant in her Pontiac car while they were traveling from Pueblo, Colorado, to Lincoln, Nebraska, to visit relatives and friends. It occurred at the southeast edge of the city of Hastings, Nebraska, at a place where U. S. Highway No. 6 forms a Y with Elm avenue and that as a result thereof the appellee was injured.

The evidence discloses that appellee is the wife of John P. Landrum, a traveling salesman. That about March 1, 1941, they moved to Colorado Springs, Colorado, but that previous thereto they had become acquainted with Ruth Roddy, who subsequently thereto on July 5, 1941, married Mr. Wood and who is the appellant Ruth Roddy Wood. After the Landrums moved to Colorado Springs, which is about 42 or 43 miles from Pueblo where the appellant lived, the acquaintanceship between the appellee and appellant grew very quickly. After May 1, 1941, they were constantly together over weekends either one going to Pueblo or the other to Colorado Springs, each having her own car. The appellant was secretary-treasurer of the Western Acceptance Corporation located in Pueblo. Some time in June the appellee moved most of her clothes from Colorado Springs to Pueblo into the apartment occupied by the appellant and from then on spent a great deal of her time in appellant's company. Commencing in July and extending through until the time of the accident, with the exception of when she had an operation in the middle of August, the appellee, who had been trained as a stenographer, had part time work with the same company for which the appellant was secretary-treasurer. On July 5, 1941, the appellant was married and took about a two week wedding trip to the state of Washington where she left her car with her husband and thereafter the appellee's car was the one used by these parties for driving until the day of the accident. In con-

nection with the appellant's work it was necessary as a matter of business that she contact the dealers of automobiles, who were their clients, and as such she visited various places in Colorado and New Mexico. She made such a trip in April, 1941, to Trinidad, Colorado, which was about 90 miles from Pueblo and on which trip the appellee went with her. The evidence shows that they drank together on this trip, although appellee denies there was any drinking in the car. The same thing is true with reference to a trip about the last week of July when they attended the Sky High Stampede at Monte Vista, Colorado, some 140 miles southwest of Pueblo. On the 4th or 5th of September appellee's son drove appellee and himself to Roswell, New Mexico, where the son was to attend a military school. Appellant took a train to Roswell, which is some 500 to 600 miles from Pueblo, to drive the car back as the appellee was not permitted to drive the car after the operation on her foot. They left Roswell on Friday afternoon and drove to Amarillo, Texas, where they stayed until Sunday afternoon when they drove home. On this trip drinking was indulged in. It appears from the evidence that on all of these trips and on all occasions, as the appellee states, the appellant was a good fast driver and she never complained about the speed at which the appellant drove, nor did she object to appellant driving her car. As to the trip made on September 26, 1941, during which trip the accident involved in this case happened, it is generally shown by the evidence, without dispute, that they left Pueblo about 12 noon mountain time and arrived in Hastings, Nebraska, where they stopped at the J. H. Wehn filling station about 7:45 mountain time or 8:45 central time. This distance is about 460 to 470 miles. They stopped at either two or three places on the route of travel to have the car serviced. This would give them an average driving speed of a little over 60 miles an hour without considering time out for stops. When they left Pueblo they put a bottle of Bourbon, a quart of buttermilk, and two sandwiches in the car, which sandwiches they ate shortly after they left Pueblo.

There is, however, this dispute in the evidence. Mrs. Landrum testifies that they opened the bottle of Bourbon shortly after they left Colorado Springs and each took a drink, that the appellant then took three or four drinks between there and Alma, Nebraska, where they arrived about 6:30 mountain time where they each took another drink. That after they had stopped in Hastings, where they stayed for about fifteen minutes and just before they left, the appellee suggested they stop and eat and stay there overnight, but the appellant suggested they eat in Lincoln. Shortly before leaving the station the appellant took a drink and then shortly thereafter while driving away from the station but before reaching the viaduct took the bottle and took another drink while the appellee held the steering wheel. Appellant stated, it being only about 100 miles to Lincoln they would be there in a few minutes. Appellee also testifies that while traveling during the day on two different occasions she complained about the speed at which they were traveling, not because she thought it was dangerous but because it made her nervous. After they left the filling station at Hastings she was sitting on her foot and fixing her cosmetics when she looked at the speedometer as they were going down the viaduct, the north end of which is some four or five blocks from the scene of the accident, and noticed they were going about 80 miles an hour and again protested to the appellant of the high speed, especially at night. She remembers very little about the accident other than when they reached the Y where Elm avenue extends north, the appellant failed to make the curve to the right on Highway No. 6 and continued straight ahead into the ditch on the right side of Elm avenue where the car upset.

The appellant testifies that after they left Pueblo they opened the bottle of Bourbon at Goodland, Kansas, where they each had a drink and then did not have another drink until they reached Alma, Nebraska, where each of them took another, which was the last drink they took before the accident, and that each of them had two drinks during the

entire trip. That after they had the car serviced in Hastings and as they proceeded on, the appellee made no suggestion as to eating and she did not take a drink of Bourbon but that she merely drank a bottle of coke while at the station. That as they were going down the viaduct the appellee was sitting with one leg under her and her hand resting on her knee facing her and fixing her finger nails from the light of the glove compartment. Noticing that she was going about 45 miles an hour, she mentioned to the appellee that the road was new to her and asked the appellee to help her watch the road to see which way to make the turn. That she then released her foot pressure on the accelerator. That as they approached the Y in the road Elm avenue, which extended north, seemed to be the better lighted and she continued on it and did not notice that it was a gravel road until she had gone onto it and then thought she would cut across the triangular space in the Y by turning to the right and was in the ditch before she realized it was too deep. She then attempted to turn back onto Elm avenue to the northeast and in doing so the car went over on its top. She then turned off the ignition and they got the bottle of liquor and put it in one of the bags in the car and honked the horn. Appellant denies that at any time during the trip the appellee had protested against the speed at which she was driving, which during the day on good stretches of the road had been between 80 and 90 miles an hour.

The weather was good and the car was practically new and in good working order. It ended upside down in the west part of the ditch east of Elm avenue facing northwest with its top buried about a foot in the dirt. Its gas tank, filled with gas, was in the ditch west of Elm avenue and about 40 feet from the car.

Are the facts sufficient to sustain a finding that the appellant was guilty of gross negligence? The record discloses, if believed by the jury, that the appellant had been driving her car at a high rate of speed during the entire trip and that shortly before the accident she was going approximately 80 miles an hour which speed she continued to

maintain until the accident happened. That she was traveling in the night time over a road with which she was not familiar. That she had been drinking intoxicating liquors during the entire trip. That she became confused when she arrived at the Y in the highway and took the wrong road. That she then attempted to cut across the island in the Y to get back to the highway and ran into a ditch and upset. We have held in many cases that the question of the existence of gross negligence must be determined from the facts and circumstances in each case. We therefore conclude that under the facts as disclosed by the record the question of whether the defendant was in this case guilty of gross negligence is for the jury.

The appellant contends that this action being based on gross negligence, the definition thereof contained in Instruction No. 5 not being in the language of the meaning thereof as stated in *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96, such was prejudicial error and grounds for reversal. The definition as contained in Instruction No. 5 is as follows: " 'Gross negligence' is such an absence of care on the part of the person charged in failing to avoid causing or inflicting injury as may be described as reckless and such as indicates a reckless disregard for the consequences. It is a high degree of negligence." In *Morris v. Erskine, supra,* we said: "Gross negligence means great or excessive negligence; that is, negligence in a very high degree. It may be said that it indicates the absence of even slight care in the performance of a duty, * * * ," and this definition has been approved in many of our decisions since that opinion. However, there are other decisions of this court defining gross negligence which do not use the exact language of the definition in *Morris v. Erskine, supra,* but do have the same meaning. None of these definitions refer to the requirement of the act as being reckless, nor do we think any such requirement was intended by the statute. While this requirement may be said to be beneficial to the appellant, however, a careful examination of the entire definition does not bring it within the meaning of our definition

under the statute. While it is not required that an instruction defining gross negligence exactly follow that given in *Morris v. Erskine, supra,* its meaning must be the same. When a definition has been given by this court and continuously approved, no error can be had by using that definition and uniformity in the courts will be obtained thereby.

The appellant further contends that the court committed prejudicial error by including in Instruction No. 6 the fact that by violation of the laws of the road in Nebraska the defendant became criminally liable, citing as authority therefor the case of *Missouri P. R. Co. v. Geist,* 49 Neb. 489, 68 N. W. 640. That part of Instruction No. 6 containing reference thereto is as follows:

"It shall be unlawful for any person to operate any motor vehicle while under the influence of alcoholic liquor. *Any person who shall operate any motor vehicle while under the influence of liquor shall be deemed guilty of a crime, and upon conviction thereof shall be punished.*

"Any person who drives any vehicle in such a manner as to indicate either a willful or wanton disregard for the safety of persons or property is guilty of reckless driving, *and upon conviction thereof shall be punished.*" (Italics ours.)

However, in quoting these statutes, we do not think the trial court erred in including that part which provided that a violation thereof was a crime for which the violator should be punished. In so far as *Missouri P. R. Co. v. Geist, supra,* is in conflict herewith, the same is overruled.

While instruction No. 6 is poorly phrased, however, within the rule announced in *LaFleur v. Poesch,* 126 Neb. 263, 252 N. W. 902, it did properly submit to the jury the question of the effect of the violations, if any, of any statutes regulating the use and operation of motor vehicles upon the public highways. The rule as announced in *LaFleur v. Poesch, supra,* is as follows: " * * * a violation of statutes regulating the use and operation of motor vehicles upon the highways is not negligence *per se,* but evidence of negligence which may be taken into consideration with all

the other facts and circumstances in determining whether or not negligence is established thereby. *Stevens v. Luther*, 105 Neb. 184; *Dorrance v. Omaha & C. B. Street R. Co.*, 105 Neb. 196; *Thomas v. Rasmussen*, 106 Neb. 442; *Taylor v. Koukal*, 107 Neb. 409; *Burkamp v. Roberts Sanitary Dairy*, 117 Neb. 60."

Does the comparative negligence statute, section 20-1151, Comp. St. 1929, which is as follows: "In all actions brought to recover damages for injuries to a person or to his property *caused by the negligence* of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury," (Italics ours) apply in cases arising under the guest statute, section 39-1129, Comp. St. Supp. 1941, which is as follows: "The owner or operator of a motor vehicle shall not be liable for any damages to any passenger or person riding in said motor vehicle as a guest or by invitation and not for hire, unless such damage is caused by the driver of said motor vehicle being under the influence of intoxicating liquor or because of the *gross negligence* of the owner or operator in the operation of such motor vehicle. For the purpose of this section, the term 'guest' is hereby defined as being a person who accepts a ride in any motor vehicle without giving compensation therefor, but shall not be construed to apply to or include any such passenger in a motor vehicle being demonstrated to such passenger as a prospective purchaser." (Italics ours.) In *Sheehy v. Abboud*, 126 Neb. 554, 253 N. W. 683, we held that the statute was not ordinarily applicable in actions involving the guest statute. In the case of *Morris v. Erskine*, *supra*, we held: "We are of the opinion that in adopting the guest act the legislature used the term 'gross negli-

gence' as indicating a degree of negligence." And in *Rogers v. Brown*, 129 Neb. 9, 260 N. W. 794, we said: "The remedy of a motorist's guest for negligence resulting in personal injuries, as protected by the constitutional provision, that 'every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law,' was not taken away by the guest law. * * * The legislature merely changed the degree of proof essential to a recovery for damages." The statute section 20-1151, Comp. St. 1929, above quoted, refers to all actions caused by the negligence of another. We believe the correct construction of the guest statute to be as stated in the concurring opinion of Judge Harvey in the case of *Koster v. Matson*, 139 Kan. 124, 30 Pac. (2d) 107: "It (the Nebraska guest statute) does not purport to take away from him the defense of contributory negligence which he had to all actions for negligence before the statute was enacted. The obvious purpose of the statute was to relieve him from certain liability, not to remove defenses then available to him. The result necessarily is that what we speak of as contributory negligence remained as a defense in an action for gross negligence under the statute." When an action under the guest statute is based on gross negligence, the comparative negligence statute is applicable. *Sheehy v. Abboud, supra,* is overruled in so far as the same is in conflict herewith.

The appellant pleaded that the appellee had assumed the risks of injury incident to the trip and the court failed to instruct with reference thereto. "A party to an action is entitled to have the jury instructed with reference to his theory of the case, when the pleadings present the theory as an issue and it is supported by competent evidence." *Boice v. Palmer*, 55 Neb. 389, 75 N. W. 849. This presents the following questions: First, is the principle of the assumption of risk available in a tort action based on negligence? Second, if available, is it consistent with the defense of contributory negligence? Third, if consistent with contributory negligence, do the facts here present a ques-

tion of contributory negligence, assumption of risk, or both?

In the case of *Wilkins v. Water & Light Co.*, 92 Neb. 513, 138 N. W. 754, we held: "The doctrine of assumption of risk arises from the relation of master and servant, and does not constitute a defense where that relation does not exist between the parties." And as stated in 38 Am. Jur. 845, sec. 171: " * * * there is authority for confining the doctrine of assumption of risk to cases arising out of the relation of master and servant, or at least to cases involving a contract relationship, * * * ." However, in the case of *Thompson v. Young Men's Christian Ass'n*, 122 Neb. 843, 241 N. W. 565, we held: " * * * risks which are obvious to a person are assumed by her, where, as in the present case, the relation is that of owner and invitee or patron," and this was approved in *Wendell v. Roberts*, 125 Neb. 619, 251 N. W. 264. We have also in *Kelly v. Gagnon*, 121 Neb. 113, 236 N. W. 160, approved the rule announced in *Olson v. Hermansen*, 61 A. L. R. 1243 (196 Wis. 614, 220 N. W. 203): "Guests who accept the hospitality of the driver of an automobile accept whatever risk attends the degree of proficiency of such driver and his usual and customary habits of driving with which they are familiar." This same principle was inferentially approved in *Swengil v. Martin*, 125 Neb. 745, 252 N. W. 207, and *McGrath v. Nugent*, 133 Neb. 237, 274 N. W. 549. From a survey of the many cases on the subject it now seems well established that one who voluntarily assumed the risk of injury from a known danger is barred from a recovery in a negligence case within the maxim of *"volenti non fit injuria."* As stated in 38 Am. Jur. 845, sec. 171: " * * * it is now fairly well settled that the defense of assumed risk may exist independently of the relation of master and servant. The maxim, *'volenti non fit injuria,'* applies in a proper case independently of any contract relation. It is said that one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof. One cannot deliberately incur an obvious risk of personal injury, especially when preventive measures are at hand, and then hold the author of the danger

for the ensuing injury." The maxim *"volenti non fit. injuria"* has been defined in *White v. McVicker,* 216 Ia. 90, 246 N. W. 385, as follows: " * * * the maxim meant the defense arising from a specific assent by the party injured to the particular act which, if done without assent, would be a legal wrong. * * * 'conduct as shows a willingness to take the chances of the defendant's action and run the risk; i. e., a general assent to a condition which may or may not give rise to the particular injury.'" Also, as stated in *Gover v. Central Vermont Ry. Co.,* 96 Vt. 208, 118 Atl. 874: "If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto." See, also, discussion in 1 Shearman and Redfield, Law of Negligence (6th ed.) 290, sec. 114b. This principle as to the assumption of risk in negligence cases has been adopted in many jurisdictions. See *Gover v. Central Vermont Ry. Co., supra; Freedman v. Hurwitz,* 116 Conn. 283, 164 Atl. 647; *White v. McVicker, supra; Edwards v. Kirk,* 227 Ia. 684, 288 N. W. 875; *Columbia Amusement Co. v. Rye,* 288 Ky. 179, 155 S. W. (2d) 727; *Adams' Adm'r. v. Callis & Hughes,* 253 Ky. 382, 69 S. W. (2d) 711; *Bradburn v. Wabash R. Co.,* 134 Mich. 575, 96 N. W. 929; *Watterlund v. Billings,* 112 Vt. 256, 23 Atl. (2d) 540. This principle operates in a rather strictly limited field. A person, in entering upon an undertaking, may be fully aware of the danger and may use all the care that it is possible to use; in fact, the very danger involved may make him more careful than usual. Certainly in such a case it cannot be said that he is guilty of contributory negligence. However, there is a question involved of whether or not he has voluntarily assumed the risk of the danger. Since the application of the maxim is extending beyond contractual relations the doctrine of assumption of risk, its application must be strictly limited to the terms thereof. Within the limits of its terms the max-

im of *"volenti non fit injuria"* is applicable to negligence actions in this jurisdiction.

Is the defense of assumption of risk in negligence cases under the maxim *"volenti non fit injuria"* consistent with the defense of contributory negligence? A discussion of this distinction is found in 38 Am. Jur. 847, sec. 172: "The defense of assumption of risk is closely associated with the defense of contributory negligence. One who does not exercise ordinary care for his own safety is said, speaking broadly, to assume the risk, that is, take the chance, of being hurt. The defense of assumption of risk is not incompatible with contributory negligence; the two defenses may arise under the same state of facts. Some courts regard the defenses as interchangeable. However, there is a clear distinction between the defense of assumption of risk and the defense of contributory negligence, notwithstanding they may arise under the same set of facts and may sometimes overlap. There is a line of demarcation which, if carefully scrutinized and followed, will allow the court to differentiate between them. Assumption of risk rests in contract or in the principle expressed by the ancient maxim, *"volenti non fit injuria,"* whereas contributory negligence rests in tort. The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence implies the failure of the plaintiff to exercise due care. As stated in some decisions, assumption of risk is a mental state of willingness, whereas contributory negligence is a matter of conduct." A further discussion of this will be found in 45 C. J. 1043, sec. 600. As stated in *White v. Mc-Vicker, supra:* "While the doctrine of contributory negligence and assumption of risk may arise under the same set of facts and sometimes thus overlap each other, yet we have consistently distinguished them and held that they are distinct and separate and must not be confounded with each other." As stated in *Watterlund v. Billings, supra:* "There is a distinction between the doctrine of contributory negli-

gence and the doctrine of assumed risk, since there may be the voluntary assumption of the risk of a known danger such as will bar one from recovery for injury to person or property, even though in the exercise of due care." To like effect are *Gover v. Central Vermont Ry. Co., supra; Galveston, H. & H. R. Co. v. Hodnett,* 106 Tex. 190, 163 S. W. 13; *Freedman v. Hurwitz, supra; Bradburn v. Wabash R. Co., supra; Fandek v. Barnett & Record Co.,* 161 Wis. 55, 150 N. W. 537; *Biersach v. Wechselberg,* 206 Wis. 113, 238 N. W. 905. Assumption of risk under the maxim *"volenti non fit injuria"* involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas, the defense of contributory negligence implies the failure of the plaintiff to exercise due care. It may be said that contributory negligence involves the notion of some fault or breach of duty on the part of the one charged therewith, or a failure to use such care for his safety as an ordinary prudent person would have used under the same or similar circumstances. On the other hand, under the assumption of risk, even though the risk be obvious, the person may be free from any suggestion of fault or negligence on his part. While under a certain set of facts the two may be difficult to distinguish and sometimes seem to overlap, yet when carefully considered they can be distinguished and are distinct and separate and not inconsistent.

The two defenses being consistent, do the facts here present an issue of contributory negligence, assumption of risk, or do they overlap so that both issues should be present? Appellee voluntarily consented to ride in appellant's car from Pueblo to Lincoln knowing from her previous experiences that appellant was a fast driver and in the habit of drinking intoxicating liquors, in fact, appellee joined in the drinking thereof. Upon warning appellant that her fast driving between Pueblo and Hastings made her nervous, the appellee knew that the speed had not been diminished. She realized this at Hastings, where they stopped and other transportation was available, for they had just

traveled from Alma, Nebraska, a distance of about 90 miles after dark in about an hour and fifteen minutes. The evidence also discloses testimony that she warned appellant of the high speed shortly before the accident. As stated in the case of *Van Fleet v. Heyler,* 51 Cal. App. (2d) 719, 125 Pac. (2d) 586: "The true rule on this point is not that a guest must, where he knows the driver's conduct is improper, leave the car merely if he has reasonable opportunity to do so, but that he must leave it, a reasonable opportunity being afforded, if a person in the exercise of ordinary care would do so under the circumstances." And in *Curran v. Earle C. Anthony, Inc.,* 77 Cal. App. 462, 247 Pac. 236: "While one who knows or should know that the driver is carelessly operating the car must use ordinary care for his own safety, and it is incumbent upon him to take proper steps for his own protection, still whether failure to protest against the course being pursued by the driver, or to leave the vehicle, constituted a want of ordinary care which proximately contributed to his injuries was a question of fact to be submitted to the jury, unless from the evidence but one conclusion might reasonably be drawn." To like effect is *Dedman v. Dedman,* 155 Tenn. 241, 291 S. W. 449, and *Gudbrandsen v. Pelto,* 199 Minn. 220, 271 N. W. 465. While situations may arise where the conduct of the guest is such that none of his acts may fall within the category of negligence but where he had full knowledge and voluntarily accepted the risks of those things which caused the accident out of which he was injured and the question be one of assumption of risk, however, generally the question of whether or not the conduct of the guest while riding in the car of his host would preclude him from recovering damage if his host is guilty of gross negligence in causing the same is one of contributory negligence. Under the facts of this case the question of whether or not the conduct of the appellee with reference to her joining with the appellant in the drinking of intoxicating liquor while traveling in a car at a high rate of speed which she knew the appellant was in the habit of doing, the sufficiency of the warn-

ings which she said she gave, her failure to get out at Hastings when the opportunity presented itself and other transportation was available, and her general conduct in riding as a guest in the car while it was traveling in the night time and at a high rate of speed is such as to defeat any right to recover herein to which she may be entitled is a question of contributory negligence and under all of the facts, one that should be submitted to a jury.

For the reasons herein set forth, the judgment and verdict of the lower court are reversed and set aside and the action is remanded to the lower court for a new trial in accordance herewith.

REVERSED.

YEAGER, J., participating on briefs.