## UNION PAC. R. CO. v. BLANK et al.
### No. 13593.

Circuit Court of Appeals, Eighth Circuit.

April 8, 1948.

R. B. Hamer, of Omaha, Neb., (T. F. Hamer and G. C. Holdrege, both of Omaha, Neb., on the brief), for appellant.

James J. Fitzgerald, of Omaha, Neb., (Fitzgerald, Tesar & Welch, of Omaha, Neb., on the brief), for appellee R. Murle Blank.

Bryce Crawford, Jr., of Omaha, Neb. (Harry L. Welch, of Omaha, Neb., on the brief), for appellee Ray Isard, doing business as Isard Painting & Decorating Co.

Before GARDNER, THOMAS, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

Appeal from a judgment in favor of R. Murle Blank for personal injuries against the Union Pacific Railroad Company. Since there was a third party defendant, clarity will be served by referring to the parties by name.

Mr. Blank was injured on March 29, 1943, in one of the Union Pacific's shop buildings in Omaha, Nebraska. He was in the employ of Ray Isard, a painting contractor. Mr. Isard had contracted with the Union Pacific to paint the interior of several of the latter's buildings. That contract contained a provision to the effect that Isard was an independent contractor and would indemnify the Union Pacific against claims for damages growing out of any injuries to Isard's employees which were not occasioned by the negligence of the Union Pacific. It was provided, however, that even if an injury occurred to any of Isard's employees as a result of the Union Pacific's negligences and there was "concurring" negligence on Isard's part, the latter should still indemnify the former "in proportion to" Isard's negligence. Isard further agreed to so manage, control and direct his employees as to prevent injury to them from the proper operation of the Union Pacific's business.

Blank was injured when, in moving the supports for a scaffold and attaching those supports to steel girders high above the floor, he placed his hand on the track of a large crane just as the crane was approaching him from his rear. The wheel of the crane cut off a portion of his right hand.

Blank sued the Union Pacific for his injuries. Compensation benefits provided by the Nebraska Workmen's Compensation Act, R.S.Neb.1943, § 48-101 et seq., having been paid to Blank by Isard and the latter's insurance carrier, both Isard and the insurance carrier were joined as defendants under authority of the Nebraska Statute for the purpose of protecting their rights to be repaid the compensation benefits out of any judgment Blank might obtain against the Union Pacific.

The Union Pacific answered Blank's petition by admitting his employment by Isard, his accidental injury while in the course of his employment, and the payment to him of compensation benefits by Isard and the insurance carrier, but denied all allegations of negligence on its part and asserted that Blank's injury was proximately caused by his own carelessness. The answer further pleaded assumption of risk by Blank.

The Union Pacific also filed a Third Party Complaint against Isard in which the indemnity provisions of the contract previously referred to were set out and alleging that if Blank's injuries were occasioned by the negligence of the Union Pacific, Isard was negligent in managing and directing Blank and Isard's other agents and employees engaged in work on the contract, and that Isard should therefore be held liable to indemnify the Union Pacific in proportion to Isard's negligence.

Isard answered the Third Party Complaint denying any negligence on his part and asserting that Blank's injury resulted from his own negligence and the negligence of the Union Pacific. At the close of the evidence the court dismissed the Union Pacific's Third Party Complaint against Isard and also dismissed Blank's complaint against Isard. There was a verdict in favor of Blank for $14,500.00 against the Union Pacific. The court allowed the claim of the insurance carrier for subrogation in the amount of $2815.57 and, deducting that from the amount of the verdict, entered judgment for Blank for $11,684.43. No

judgment was given the insurance carrier against the Union Pacific because the former had insured the latter against claims such as this under another policy. There is no complaint being made by the insurance carrier concerning this order.

The assignments of error made by the appellant, Union Pacific, may be summarized as follows:

1. That the undisputed evidence establishes that Blank was guilty of contributory negligence in such a high degree as to preclude his recovery;

2. That the undisputed evidence establishes that Blank assumed the risk of his injury and is thereby precluded from recovering;

3. That even if there was an issue of fact for the jury on the question of assumption of risk which would prevent the Union Pacific from being entitled to a directed verdict, the trial court committed reversible error in refusing to submit the question of Blank's assumption of risk to the jury;

4. That the court erred in admitting in evidence a private rule of the Union Pacific governing the conduct of its employees, as a basis for an assignment of negligence by Blank;

5. That there was a factual issue concerning the negligence of Isard and hence it was error to direct a verdict in favor of Isard on the Union Pacific's Third Party Complaint;[1] and

6. That certain portions of the court's charge were erroneous.

These assignments will be considered in the order in which they are set out above. Such additional facts will be stated in connection with the consideration of each assignment as may be necessary to an understanding of the questions involved in each.

The cause of action arose in Nebraska and the cause was tried in that State. The questions of substantive law herein involved will therefore be determined by the law of that State. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

By a provision of the Nebraska Statute the contributory negligence on the part of Blank will not bar his recovery if his negligence was slight and the negligence of the Union Pacific was gross in comparison.[2]

On appeal, in determining whether a motion for a directed verdict should have been sustained, the aspect of the evidence most favorable to the conclusion reached by the jury must be adopted by the appellate court.

The questions of the negligence of the Union Pacific and of Blank's contributory negligence were submitted to the jury. The Union Pacific concedes that there was sufficient evidence of its negligence on one assignment to justify its submission to the jury. But, as heretofore stated, it contends that the undisputed evidence shows that Blank was guilty of such a high degree of contributory negligence as to bar his recovery. On that issue the evidence viewed in its most favorable aspect to Blank shows that Blank had been working in the boiler room of the Union Pacific's shops for several days prior to his injury. He and another employee of Isard were painting steel girders extending north and south, approximately in the center of the room, from one end to the other. These girders were some thirty feet from the floor and

---

[1] As heretofore indicated, the trial court dismissed the Third Party Complaint apparently without formally instructing the jury to return a verdict for Isard on that complaint. No criticism is made concerning the form of the order, hence it will be treated as a formal direction of a verdict in favor of Isard, which in fact it actually amounted to.

[2] Sec. 25-1151, R.S.Nebr.1943. "Actions for injuries to person or property; contributory negligence; comparative negligence. In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

about thirty-three inches apart. The upper side of each girder had a narrow flange extending upward approximately five inches on each side of the girder. Along the center of the upper side of each there was a railroad rail. The top of these rails was an inch or two higher than the upper edge of the flanges. The west rail supported the east wheels of two large cranes which operated north and south on the west side of the building. The west wheels of the cranes on the west side of the room were supported by a rail attached to the west wall of the building. The two cranes on the east side of the room operated on the rail attached to the east center girder and another rail attached to the east side of the building. All of these cranes moved back and forth, north and south, in moving loads from one place to another in the room. A cab was attached to each crane in which the crane operator rode and operated the crane. On the day of the accident Mr. Blank and his companion, Harry DeWitt, were instructed to paint the portion of the girders above an oven which was not then in operation. To do so it was necessary for the scaffold, referred to as a "stage", to be moved. This stage was suspended from the girders by hooks which were placed over the flange on each girder. The hooks had a ring at the lower end into which the upper block of a block and tackle was fastened. The lower blocks were attached to the floor of the stage permitting the stage to be raised or lowered to the desired height for painting the girders. To move the stage the floor had been lowered and was resting on the top of the oven four or four and one-half feet above the level of the floor. Blank then went to the north end of the room and climbed a ladder up the wall to the level of the top of the girders. He then walked along the top of the east girder, got one of the hooks and stepped down on to an asbestos-covered pipe which was between the two girders approximately ten inches below the top of the flanges on the east girder and twenty-two and one-half inches below the top of the flanges on west girder; the latter being approximately twelve inches higher than the east girder. He reached over the top of the east girder and placed the hook over the flange on the east side of that girder. He then lowered a small rope to the floor which DeWitt attached to the upper block. Blank then pulled up the block with the five strands of rope attached to it and fastened the block to the ring in the hook. He was then in a crouching position on the pipe facing south and saw one of the east side cranes approaching from the south. When that crane was almost to him he leaned over to the west to let that crane go by and placed his arm over the top of the west girder and unintentionally placed his hand on top of the rail on that girder. Almost immediately (the length of time was estimated at from a few seconds to a half minute) the east wheel of one of the west side cranes ran over his hand. This crane was moving from the north and from his rear. Its regular operator had always stopped and called out to see if the painters were in the clear before he passed them. The regular operator was not on duty that afternoon but Blank, not knowing that, did not look to the north before he placed his arm on top of the west girder. The substitute operator of the west side crane had picked up a load some thirty feet north of Blank and at that time looked south along the west center girder. He said there was nothing to prevent him from seeing the painters "along that trestle". He saw no one and proceeded south with his load, looking down at the load. The cab on that crane was open on the south. Blank was approximately two feet south of a large steel post which extended from the floor to the ceiling, supporting the latter and also the steel girders. Although this post and a large air duct attached to the post obstructed the west side crane operator's view of Blank to some extent, yet the evidence submitted by Blank was to the effect that at least his head and shoulders were visible above the west girder and the crane was traveling at such a slow speed that it could have easily been stopped after the operator should have seen him. In addition to the evidence of Blank's visibility to the crane operator, the testimony showed that the lower block and five strands of rope were hanging from the east girder. The small rope was hanging down from a point on the pipe a few

inches from where Blank was standing on the pipe. A barrel in which the extra rope of the block and tackle was coiled was standing a few feet east and north of the furnace. The floor of the stage was on the top of the furnace almost directly under Blank. DeWitt, who had been working with Blank all morning and up to the time of the accident that afternoon, was standing on the floor a few feet east and north of Blank, watching Blank and the crane approaching from the south, and had just beckoned to Blank directing his attention to the northbound east side crane. All of these circumstances could have properly had a heavy bearing with the jury on the question of the comparative negligence of Blank and the Union Pacific's employees. And, in addition, it appeared from the Union Pacific's evidence that the west side crane operator had been in and around the building all that morning watching the work being done in the boiler room, including the painters. Blank and DeWitt both testified that the stage was moved three or four times a day, each time in the same manner.

The foregoing factual situation does not warrant this court in holding as a matter of law that the jury's conclusion to the effect that Blank's negligence was slight in comparison to the negligence of the Union Pacific was without evidentiary support. As indicated, there was evidence that Blank was justified in assuming that he would be warned of the approach of the southbound crane. Hence, cases such as Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911, cited by the Union Pacific do not apply. The factual situation here is more similar to the facts in Smale v. Wrought Washer Mfg. Co., 160 Wis. 331, 151 N.W. 803, in which it was agreed that the crane operator would notify the plaintiff of danger from the movement of the crane.

Under the law of Nebraska the defense of assumed risk may exist independently of the relation of master and servant. Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82, 149 A.L.R. 1041. But the contention that the undisputed evidence established that Blank assumed the risk of his injury is not sustained by the record.

There was evidence from which the jury might have found that Blank's injury was the result of the negligence of the Union Pacific's employees in not warning him of the approach of the southbound crane. In that event the risk was not one which was ordinarily incident to Blank's work and which would have existed even if the Union Pacific had exercised due care for his safety. Nor was it, under the theory of Blank's evidence, a risk arising from negligence of the Union Pacific which was obvious to Blank. It is only when the risk exists in spite of the exercise of due care or when the risk results from negligence which is obvious that it is assumed by the person injured. Chicago, M. & St. P. Ry. Co. v. Donovan, 8 Cir., 160 F. 826; Gila Valley, G. & N. Ry. Co. v. Hall, 232 U.S. 94, 34 S.Ct. 229, 58 L.Ed. 521; Davis v. Crane, 8 Cir., 12 F.2d 355.

The refusal of the trial court to submit the question of assumption of risk to the jury presents a much more serious question. The right of the Union Pacific to have that question submitted is not dependent upon our judgment as to whether the Union Pacific sustained the burden of demonstrating that Blank had assumed the risk of his injury. That question should have been submitted to the jury if the Union Pacific produced sufficient evidence to create a factual issue. In determining that the trial court was correct in not directing a verdict for the Union Pacific upon the ground that plaintiff was guilty of contributory negligence, we have set out Blank's theory of the evidence. In determining whether the issue of assumption of risk should have been submitted to the jury, we may not apply Blank's theory of the weight of the evidence but the Union Pacific's evidence must be carefully considered for the purpose of determining whether that evidence presented a submissible factual issue. From that viewpoint it was contended and substantial evidence was offered to support the theory that Blank was fully cognizant of the fact that red lights were not placed along the girders to block off the movement of cranes while he and DeWitt were painting those girders. It was the Union Pacific's theory that such action was unnecessary. That position was

predicated upon the hypothesis that Blank and DeWitt had been instructed to use extension ladders in moving their scaffold or stage from one section of the girders to another. If extension ladders had been used, then the factual premise was indulged by the Union Pacific that the cranes would not interfere with or be dangerous to the painters while changing their scaffold or in the painting operation on the girders. It was upon that factual hypothesis that the Union Pacific insisted that it was not customary for the crane operators to call out to the painters to make sure that they were in the clear before the crane passed a section where painting was being done. It was upon the same factual hypothesis that the Union Pacific contended that it was unnecessary for them to keep anyone on the floor to watch the painters and direct the operation of the crane so as not to cause injury to the former. It was upon the same hypothesis that the Union Pacific contended that it was not negligence for the operator of the southbound crane to fail to look out for or to observe Blank at the time of the accident. There was substantial evidence in support of these hypotheses. If this evidence was accepted by the jury, then Blank was bound to have known that these various things which he claimed constituted negligence had been customarily done. If the jury concluded that it was negligence, then, according to the evidence of the Union Pacific, it was negligence that was obvious to Blank and had been indulged in customarily and systematically. If it was an obvious negligence on the part of the Union Pacific, then under the universally accepted doctrine of assumption of risk it became a question for the jury as to whether Blank voluntarily assumed the risk of his injury. We find no rational, logical way in which to avoid the conclusion that the issue of assumption of risk should have been submitted to the jury and it is not sufficient to avoid reversal that we may, with the trial judge, harbor an opinion that under the evidence in this record the Union Pacific did not sustain the burden of proving by the greater weight of the evidence the facts necessary to establish the defense of assumption of risk.

The Union Pacific complains of the admission in evidence of one of its rules[3] which it says was promulgated and intended for the guidance and protection of its own employees and was not intended to and did not affect the duty it owed to third persons. It is further contended that the rule applied only to workmen on the floor who might be injured by the movement of a load being carried by a crane and had no application to men working above the floor. It is argued that therefore the rule and its alleged violation could not be used by Blank as a basis for an assignment of negligence. The court construed the rule as applying to Blank and submitted the issue of its violation to the jury as one of the assignments of negligence. It does not appear that the authorities are harmonious on the question of whether the violation of a private rule may be used by a third party, not an employee, as negligence per se. Some courts appear to have treated certain private rules as being somewhat in the same category as ordinances or statutes. See Stevens v. Boston Elevated Ry. Co., 184 Mass. 476, 69 N.E. 338, and cases there cited. Others have condemned such use of private rules as reversible error. Lawson v. Union Pacific R. Co., 113 Neb. 745, 204 N.W. 791; Boston & M. R. R. v. Daniel, 2 Cir., 290 F. 916. Such authorities dealing with the question of whether a violation of private rules promulgated for the safety of employees may be utilized by third parties as a basis for a charge of negligence do not answer the question here presented. Under the facts of this case which were either conceded or established beyond question it is clear that Blank was working on the Union Pacific's premises pursuant to the contract with Isard requiring his presence far above the floor. The Union Pacific's employees had been given instructions to take precaution for his safety and the other painters, and special arrangements had been made, according to the Union Pacific's own testi-

---

3 "Operators of cranes, hoists, magnets, or derricks, must not move any load except on hand signal from the employee directing operation and that person must at all times be in plain view of the operator. Only one employee may be authorized to give signals to the operator."

mony, for protection to them from the movement of the cranes when notice was given of their presence in positions where they might be injured by the cranes. Blank, insofar as his right to protection from injury from the cranes was concerned, occupied substantially the same relationship to the Union Pacific as one of its employees. The trial court properly held that the protective features of the rule applied to Blank if the rule was sufficiently broad to apply to workmen who might be injured by the movement of the cranes as well as a load which the cranes might be carrying.

The court did not give the rule an unreasonable construction when it held that the protection afforded by the rule was not limited to those who might be injured by the movement of a load being carried by the cranes, but also applied to any whom the cranes in the movement of a load might injure. The admission of the rule in evidence was not error.

 Nor is there merit in the contention that there was no evidence of the violation of the rule. Mr. Veitz was the workman who called to the crane operator to move the load. The evidence was that after the load was attached to the crane neither the operator nor Veitz looked to see whether anyone was in the path of the crane but centered their attention on placing the load where Veitz wanted it. Those and other circumstances were such as would support a finding by the jury of negligent violation of the rule.

 There appears to have been no question about the fact that Isard could not be directly liable to Blank in a common law action for negligence because of the application of the Nebraska Workmen's Compensation Act to both. Isard's appearance as a defendant was initially brought about by Blank naming him and his insurance carrier as defendants solely for the purpose of affording them an opportunity for subrogation under the Compensation Act for benefits they may have paid Blank pursuant to the Act. But when the Union Pacific brought Isard into the case as a third party defendant it was for a different purpose, namely to enforce the provision of the contract entered into between the Union Paci-

fic and Isard which provided in effect that if a negligent act of the Union Pacific should result in injury to one of Isard's employees while working on the Union Pacific job and negligence on the part of Isard contributed to such injury, Isard should share with the Union Pacific any recovery against the latter in proportion to Isard's negligence. The primary issue between the Union Pacific and Isard, presented by the Third Party Pleadings, was whether Isard had violated his contractual obligation to exercise due care for the protection of his men from injury. Much of the Union Pacific's evidence in the case tended to establish the fact that early in the progress of the work representatives of the Union Pacific and Isard's superintendent on the job had an understanding that, for the purpose of protecting Isard's men from injury at any time one of Isard's employees was working in a position where he was in danger of injury from the movement of the cranes, Isard, or someone for him, would notify a designated Union Pacific electrician who would then place red lights "blocking off" the danger area from operation of the cranes therein. It is true that Isard's evidence denied any such arrangement but there was adequate evidence offered by the Union Pacific to present the factual issue, including the rather significant circumstance that someone did notify the electrician and the red lights were customarily placed at appropriate places for protection when work was being done on or above a crane, when scaffolds were being raised or lowered to or from the ceiling, and possibly other operations. The Union Pacific's evidence was also to the general effect that under this agreement no lights would be put up unless directed by Isard's men. Isard contended and offered evidence to support the theory that the Union Pacific assumed the responsibility of determining when the lights should be put up and of putting them up. Again a factual dispute but again substantial evidence on both sides. It does not appear that lights had ever been put up to protect the painters working on the girders in the boiler room where Blank was injured. The Union Pacific and Isard both charged Blank with negligence in going on to the girder to change the stage instead

of using an extension ladder from the floor. If the latter course had been followed the inference is that Blank would have been in no danger from the cranes as the ladder could presumably have been placed between the girders. It may be that such were Blank's instructions and practices, and that that was the reason red lights were never placed on the girders. But this was flatly denied by Blank who said that he customarily changed the stage in the manner he was doing it when he was injured. Isard's foreman testified that it was the plan to leave the section of girders over the flange furnace until the end of the job because the furnace when in operation would interfere with the work. Blank testified that on the day of the accident the furnace was shut down and the foreman directed him to paint the girders above it. He said that extension ladders could not have been used in placing the stage on that section because of the position of the furnace. If that was correct, (and that too was controverted) and the Union Pacific's evidence that Isard's men were to notify the electrician when lights were necessary was also accepted by the jury, this combination of circumstances coupled with the foreman's conceded failure to ask that this section be "blocked off" would have constituted additional evidence of a negligent violation by Isard's foreman of the alleged understanding and Isard's contractual obligation to the Union Pacific to use due care for the safety of his men while on the job.

It is unnecessary to further detail the evidence on the issues between the Union Pacific and Isard raised by the Third Party Complaint to demonstrate that the evidence presented a real issue of fact material to the determination of Isard's contractual liability to contribute to any judgment Blank might obtain against the Union Pacific. This factual issue should not have been withdrawn from the jury by the dismissal of the Third Party Complaint.

The Union Pacific makes several complaints concerning the court's charge to the jury. It is contended that the court inaccurately stated Veitz's position at the time of Blank's injury; that the court failed to properly inform the jury under what circumstances knowledge of an employee would be imputed to the Union Pacific; that the language used in instructing the jury concerning the crane operator's duty to observe the track upon which the crane which injured Blank operated imposed an unduly heavy obligation on that operator; and that the trial court erred in giving instructions offered by Blank and in refusing to give instructions proffered by the Union Pacific. Since on retrial there will be adequate opportunity for the correction of any inaccuracies or omissions in the charge, it is unnecessary to discuss these criticisms.

For the reasons stated the cause is reversed and remanded for a new trial.