MARY McMENAMY, Respondent, v. SCULLIN-GAL-LAGER IRON & STEEL COMPANY, Appellant.

Springfield Court of Appeals, June 6, 1910.

1. MASTER AND SERVANT: Negligence: Safe Place to Work: Warning of Danger: Contributory Negligence. An employee in defendant's foundry plant was ascending a piece of structural iron, which supported the roof of defendant's building, for the purpose of assisting in repairing a certain crane known as crane A, and was struck and killed by crane B, which had been put in motion by order of the defendant and without notice or warning to the deceased, and while deceased was in a place of danger. The evidence is examined and held sufficient to take the case to the jury on the question of defendant's negligence; and that the deceased was not guilty of contributory negligence as a matter of law.

☞ ———: ———: ———: ———: Rules and Regulations. In all classes of business, in which one set of workmen, in the performance of their work, are liable to endanger the safety of another set of workmen engaged in another class of work, the one having no relation to the other and being in no

McMenamy v. Iron & Steel Co.

way dependent upon the other, then it is the duty of the em-
ployer to use ordinary care in this as in all other cases to
prevent injury, and if, under the circumstances of the par-
ticular case, notice of the impending danger is required to be
given then it is the duty of the employer, by rule or other-
wise, to provide for such notice.

3. ——: ——: ——: ——: ——. Where large cranes
are used in a foundry plant and in moving back and forth these
cranes pass each other and so near the posts that they are
liable to strike workmen at any time, who, in the progress
of their work, may get in a position to be caught between
them, *held,* that the master should use some reasonable
method to warn the workmen when the cranes are to be
moved; that one method of giving such warning would be to
attach a bell or gong to the cranes which could be sounded
when the cranes are being moved.

4. PRESUMPTIONS: Evidence: Ordinary Care: Contributory Neg-
ligence. The law presumes, in the absence of evidence to
the contrary, that the person killed by the accident was in the
exercise of ordinary care for his own safety; this presump-
tion means that deceased did everything which an ordinarily
prudent person similarly situated would have done.

Appeal from the City of St. Louis Circuit Court.—*Hon.
Virgil Rule,* Judge.

AFFIRMED.

*Jones, Jones, Hocker & Davis* for appellant.

(1) The evidence introduced by plaintiff clearly
shows that the death of her husband was caused by his
own negligence. The demurrer offered by the defendant
at the close of the plaintiff's case therefore should have
been given by the court. Sharp v. Railroad, 161 Mo.
214; Cahill v. Railroad, 205 Mo. 393; McCarty v. Hotel
Co., 144 Mo. 397; Evans v. Railroad, 178 Mo. 514;
Lenix v. Railroad, 76 Mo. 86; Jackson v. Railroad, 104
Mo. 448; Ring v. Railroad, 112 Mo. 230; Kelly v. Rail-
road, 11 Mo. App. 1; Loring v. Railroad, 128 Mo. 355;
Moore v. Railroad, 146 Mo. 572; Smith v. Box Co., 193
Mo. 715; Montgomery v. Railroad, 109 Mo. App. 88.

(2) The court erred in instructing the jury that the crane which struck deceased should have been equipped with a bell, gong or other device. Kelly v. Railroad, 11 Mo. App. 1; Harrington v. Railroad, 104 Mo. App. 670; Saverswick v. Schwarzschild, 125 S. W. Rep. 1192. (3) The court erred in instructing the jury that defendant should have prescribed rules and regulations for the conduct of such business. Berrigan v. Railroad, 131 N. Y. 582; Morgan v. Iron Co., 133 N. Y. 666; Olson v. Lumber Co., 100 Fed. 386; Poindexter v. Paper Co., 84 Mo. App. 357; Gaska v. Foundry Co., 127 Mo. App. 169.

*John S. Leahy* and *Walter H. Saunders* for respondent.

(1) The demurrer in this case should not have been sustained under any aspect of the evidence. The questions of negligence, contributory negligence, and assumption of risk were for the jury in any event. Buckner v. Stock Yards Co., 120 S. W. 770; Shamp v. Lambert, 121 S. W. 772; Palmer v. Railroad, 121 S. W. 1087; Railroad v. Coram, 122 S. W. 116; Page v. St. Joseph Light Co., 123 S. W. 511; Woodson v. Street Railway, 123 S. W. 820; Anderson v. Electric Park Co., 125 S. W. 1196; McMurray v. Railroad, 125 S. W. 751; O'Brien v. Implement Co., 125 S. W. 805; Campbell v. Hoosier Co., 125 S. W. 845; Redmond v. Railroad, 126 S. W. 159; Ogan v. Railroad, 126 S. W. 191; Potter v. Street Railway, 126 S. W. 209; George v. Railroad, 125 S. W. 196; Railroad v. Alexander, 121 S. W. 602; George v. Railroad, 125 S. W. 206. (2) The court did not err in submitting to the jury the question as to whether or not the crane which struck the deceased should have been equipped with a bell, gong or other device, to give warning on Sunday. The master must use reasonable care to equip his appliances safely. Polaski v. Coal Dock Co., 134 Wis. 259; Schurer v. Rubber Co., 126 S. W. 1040. (3) The law requires the master to

adopt a proper "system" and to prescribe rules for the management of the business, when either complex or dangerous, because of the inter-relations of employees. Reagan v. Railroad, 93 Mo. 352; Rutledge v. Railroad, 110 Mo. 319; Francis v. Railroad, 110 Mo. 395; Foster v. Railroad, 115 Mo. 179; Rutledge v. Railroad, 123 Mo. 138; Card v. Eddy, 129 Mo. 529; Gaska v. Car & Fdy. Co., 127 Mo. App. 167; Yongue v. Railroad, 133 Mo. App. 158; Polaski v. Coal Dock Co., 134 Wis. 259; Steber v. Railroad, 139 Wis. 10; Cristanelli v. Mining Co., 154 Mich. 430; 117 N. W. 910; Doing v. Railroad, 151 N. Y. 579, 45 N. E. 1028; Telow v. Oil Co., 194 N. Y. 64, 86 N. E. 812; Fitzgerald v. International Co., 104 Minn. 138, 116 S. W. 475. (4) There is a presumption that plaintiff's intestate was in the exercise of due care at the time of his death. Brannock v. Railroad, 126 S. W. 557; Riska v. Railroad, 180 Mo. 188.

STATEMENT.—Action by plaintiff to recover damages on account of the death of her husband which it is alleged was caused by the negligence of the defendant. Among other acts of negligence alleged in plaintiff's petition are the following:

"1.    That while deceased was ascending a certain piece of structural iron which supports the roof of defendant's building, for the purpose of assisting in repairing a certain crane known as crane A, and while he was about to swing around said structural iron to get to said crane, he was crushed between said structural iron and a crane known as crane B, by reason of the said crane B being put in motion by order of defendant.

"2.    That said crane B was run into and against the deceased while his back was turned to the track on which said crane was being operated, and while he was in a position of danger, without any warning so as to enable the deceased to get out of said position of danger.

"4. That defendants failed to provide deceased with a reasonably safe place to work while repairing said crane A, and to keep the same and the approaches thereto in a safe condition during the progress of said work.

"5. That defendant failed to prescribe reasonable rules and regulations for the conduct of his business.

"6. That said crane B was not equipped with any gong, bell or other device to give warning of its approach."

The answer was a general denial, plea of contributory negligence and assumption of risk. Judgment for plaintiff for five thousand dollars and defendant has appealed.

The defendant operates a large foundry plant in the city of St. Louis, engaged in making steel castings, in which over a thousand men are engaged during the week days. There are eight departments in this plant. The main building is a large rectangular structure, covering about four acres, and divided into three large rooms, without partitions, of about five hundred feet in length. The rooms are parallel and run east and west and consist of a furnace room, a moulding or foundry room and a finishing, or chipping room. These rooms are separated by posts, structural pieces of iron with lattice or staggered work, which are about twenty feet apart and support heavy girders. On top of these girders at a distance of twenty-five or thirty feet above the floor of the plant are strung steel rails, over which the travelling cranes are operated. The cranes, therefore, move upon elevated tracks all in the same horizontal plane and the tracks are close to each other. The cranes are operated by electricity, and the motorman in charge of each crane occupies a cage below and swung from the crane. The cranes vary in width with the width of the rooms. Below the rails there are two posts. Above the rails there is only one. The structural work running

to the roof of the building is about four feet from the top of the rails. The cranes are used for the purpose of moving heavy castings, doors, and heavy weights from one part of the building to another. The room on the north, known as the chipping or finishing room, is about seventy-one feet in width and contains two fifteen ton cranes. The room in the center known as the moulding room, is about seventy-two feet in width and contains three twenty-five ton cranes. The room on the south, known as the furnace room, is about sixty-two feet in width and contains one ten-ton crane. A crane is made of structural steel much like bridge work, about three feet high, and extends from one side of the room to the other. There are two parallel beams about eight feet apart, connected at the ends with similar beams. On each corner there is a wheel and on one side there is a driving wheel. The cranes run on tracks which are about twenty-five feet above the ground and run east and west.

McMenamy, plaintiff's deceased husband, was a laborer working in the capacity of machinist's helper, and at the time he was killed, he was assisting a machinist named Robinson. The accident occurred on Sunday, a day that was used by defendant as repair day, at which time the machinery, furnaces and appliances were gone over and all necessary repairs made. On this particular Sunday there were some thirty or forty men at work in this building, deceased and others being engaged in repair work, some other men engaged in their regular work. During the week the cranes were in constant operation, and none of the men were up on the tracks, but on Sunday the cranes were only operated as occasion should require and men were sent up on these tracks to make whatever repairs should be needed. None of the cranes were equipped with a bell, gong or other device to give warning of their approach, nor were any means used to warn workmen of the movement or approach of the cranes.

McMenamy v. Iron & Steel Co.

On the Sunday in question Robinson, Randell and deceased were repairing crane A over the middle room. The south end of this crane was a little west of and very near one of the posts between the south room and the middle room—so close that a man could not pass between the corner of the crane and the post. These men were at work replacing a wheel at the south end of this crane A. McMenamy had been sent below and, on his return, climbed up the west side of the post near which they were working, and as he was passing around this post on the south to get to his place to work he was caught by the north end of the crane over the south room, called crane B, and rolled between the end of this crane and the post and crushed to death.

COX, J.—The errors assigned are that the evidence shows the deceased to have been guilty of contributory negligence, and that demurrer to the testimony should have been sustained. Second, that the court erred in submitting to the jury the question of defendant's negligence grounded upon its failure to promulgate rules requiring warning to be given of the movements of the cranes on Sunday when men were at work making repairs.

We will look first to the question of deceased contributory negligence. The evidence shows that at the time of this accident it was usual and customary for the workmen, when required to pass from the ground up to the level where the cranes were located and operated, to climb the lattice work on the posts which support the structure above in the way that deceased climbed up. It also shows that he climbed up on the west side of the post for the reason that there was some obstruction on the east side of the post at the time which made it necessary for him to climb up on the west side. The end of the crane A on which he was at work, being so close to this post that he could not pass between it and the post, made it necessary for him to pass around to the south

of the post to get to his proper place to work. On climbing up this post when he reached the level of the rails on which the wheels of the cranes run he would then be in a crouching position because of the fact that the structural work above only left an opening of about four feet above the level of the rails, and he would be required to step out on the rail, or by it, before he could assume an erect position. Witness Robinson gave it as his judgment that it would take deceased about forty or fifty seconds to climb this post. The evidence further shows that crane B which struck and killed McMenamy had been moved once before on that morning and that when it started to move just before the accident it was located about two hundred feet west of the place where McMenamy was killed; that when it started it ran six or seven miles an hour; that there was nothing to obstruct the view of the deceased after he reached the level of the rails and that if he had looked he could have seen this crane coming. There was evidence to the effect that the ends of this crane projected over the track some seven or eight inches and ran very close to the post; that the post was fifteen inches square; that for a man to stand at the end of one of these cranes and allow another to pass he would have to stand edgewise. That in climbing the post and passing around it deceased had his face to the east, and the crane which struck him came from the west.

Appellant contends that it was the duty of the deceased to look and listen for the approach of this crane and that if he had looked he could have seen it and could have thus avoided being hurt. In determining this matter we must remember that the plaintiff is entitled to every reasonable inference from the testimony that can be drawn in her favor. It must also be borne in mind that in the absence of evidence to the contrary, the law will presume that the deceased was, at the time of the accident, in the exercise of ordinary care for his own safety, and that he was not guilty of negligence contrib-

uting to his death. [Riska v. Railroad, 180 Mo. 168, 79 S. W. 445.]

This presumption means that deceased did everything which an ordinarily prudent man, similarly situated, would have done, and unless the evidence overthrows this presumption the final conclusion must be that he was not guilty of contributory negligence. If it be conceded that deceased knew that crane B was liable to be moved at any time, and that it was his duty to look out for it, and if we presume that he was in the exercise of ordinary care, we must conclude that in climbing this post when his head appeared above the rail so he could see, that he did look, and from the fact that he proceeded on his way we would also conclude that at the time he looked the crane was either not in motion, or was so far away as to lead him to believe that he had ample time to proceed on his way and get around the post and out of danger before it would reach him. The evidence shows the crane to have been, before starting, two hundred feet away and if it had run at six or seven miles an hour, as testified, it would take it about twenty seconds to reach the post at which it struck and killed McMenamy. After climbing up to the level of the rails the only way McMenamy could avoid being injured would have been to have gone around the post before the crane struck him. The fact that the ends of this crane passed very near the post which was only fifteen inches in width, and he only having an elevation of four feet under the structural iron above on which to stand, forced him to occupy a crouched position and prevented him from standing edgewise as he would have been compelled to do to have remained there and allowed the crane to pass. It seems to us that this evidence is sufficient to warrant the jury in finding that deceased was exercising ordinary care and that the injury was occasioned by the fact that when he looked the crane had not started, and that he then proceeded upon his way around the post without any thought of danger and no

warning being given him, the crane came upon him una-wares and thus caught and killed him.

Some suggestion is made that the deceased might have gone up some other way; might have climbed some other post, but to have done this he would, after having climbed up, have been required to walk over this structural work twenty-five feet in the air, some distance to his place of work.

The evidence also shows that at one time ladders had been provided for the use of the men in going from the floor to places of work on the level of these rails where these men were at work; that these ladders had become unsafe and the workmen had, for that reason, abandoned them and it had become the usual custom to climb these posts, and it cannot be said that deceased was negligent in following the usual custom, nor can he be blamed for climbing the post that would land him nearest his place of work.

The defense of contributory negligence is an affirmative one and the burden of showing it is upon the defendant, and we are not prepared to say that under this evidence it was shown by plaintiff's testimony, in a way to require the court to declare him guilty of contributory negligence as a matter of law. We think the question was properly submitted to the jury, and they having found in plaintiff's favor we shall not disturb their finding for that reason.

It is next contended that there was no evidence to show the defendant guilty of any negligence and that demurrer to the testimony should have been sustained for that reason. The determination of this question turns upon whether or not it was the duty of defendant to have given warning of the approach of the crane, or in some way notified deceased of the approaching danger. The court, in its instructions, submitted to the jury the question as to whether or not it was the duty of defendant, under the facts proven in this case, to have prescribed some rules or regulations in the conduct of its

business relating to the operation of these cranes with a view to give notice of their approach and warn workmen thereof, so that they might avoid danger, and, on this issue, the jury by finding a verdict for plaintiff, must have found that it was the duty of defendant to have provided some regulation to have guarded against injury to deceased.

The question of the duty of parties engaged in complicated and intricate work to establish and promulgate rules for the conduct of business was thoroughly gone over by the St. Louis Court of Appeals in the case of Gaska v. Foundry Co., 127 Mo. App. 169, 105 S. W. 3, to which reference is made for a discussion of this question, and it will only be necessary to state here that in all classes of business, in which one set of workmen, in the performance of their work, are liable to endanger the safety of another set of workmen engaged in the another class of work, the one having no relation to the other and being in no way dependent upon the other, then it is the duty of the employer to use ordinary care in this as in all other cases to prevent injury, and if, under the circumstances of the particular case, notice of the impending danger is required to be given then it is the duty of the employer, by rule or otherwise, to provide for such notice. Applying this rule to the facts of this case we find that these cranes, in moving backward and forward, pass so near to each other and so near to the posts that they are liable to catch workmen at any time who might be in a position to be caught between them. A man operating the crane is under the crane, and his attention is necessarily directed to the floor where the work of his crane is to be performed, and he could not watch the track above, and yet this crane upon this occasion was put in motion at a time when the employer must have known that workmen were liable at any time to be on the track, or in a position where injury might result to them in the running of this crane, and yet it is started upon its course without any

provision for warning of any kind. It will not do to say that this was an exceptional case, and one that could not be reasonably anticipated on the part of defendant for the evidence shows that Sunday was, generally speaking, repair day, and whenever any of the cranes, or the track or wires used by the electrical department should need repairing it would be necessary for men to be upon this track, twenty-five feet from the floor, with little or no chance to avoid danger should it appear suddenly, and, at this particular time, there were workmen on crane B who were notified before it moved.` The employer should also have known that there were other workmen upon crane A, and the same regard for the safety of its employees which induced it to warn workmen upon crane B before moving it would have suggested that it warn workmen upon crane A working near the rail of crane B who were liable to be required to pass up and down, climbing the post just as deceased did at that time.

Had there been an electrical bell or gong, which is a simple contrivance, attached to the end of this crane, and had it been sounded as it might well have been, as the crane moved, no doubt the attention of deceased, when the crane approached him from the rear, would have been called to his position of danger by the sounding of this bell, and he could then, upon receiving this warning, have quickened his pace and avoided the danger.

Our conclusion is that the evidence was sufficient to take the case to the jury, and no substantial error appearing prejudicial to defendant, the judgment will be affirmed. All concur.