255 S.W.2d 443 (1953)
SZOFRAN et al.
v.
CENTURY ELECTRIC CO.
No. 28554.
St. Louis Court of Appeals. Missouri.
February 17, 1953.
Motion for Rehearing or to Transfer to Denied March 13, 1953.
*444 Luke, Cunliff & Wilson, Chapman & Chapman and Wilton D. Chapman, St. Louis, for appellant.
*445 Bartley & Bartley, Coburn, Storckman & Croft and Clem F. Storckman, St. Louis, for respondents.
Motion for Rehearing or to Transfer to Supreme Court Denied March 13, 1953.
HOUSER, Commissioner.
Action for damages for the wrongful death of Walter G. Szofran from injuries received when struck by a crane operated by an employee of Century Electric Company. From a judgment for $7,500 entered upon a jury verdict for the parents of decedent and against Century Electric Company, the defendant has appealed to this court on these grounds: (1) that respondents' evidence did not establish actionable negligence on the part of appellant; (2) that decedent was guilty of contributory negligence as a matter of law; (3) that respondents' rights and remedies are governed exclusively by the Workmen's Compensation Law; and (4) that appellant should have a new trial because of procedural errors.
The petition charged negligence in driving an overhead movable crane upon decedent while the latter was engaged in the erection of an iron girder near the crane tracks when defendant knew or should have known of decedent's position and danger, without warning him of the movement and approach of the crane.
The answer pleaded contributory negligence in that decedent knew or should have known of the approach of the crane in ample time to have gotten out of its way, and that decedent was a statutory employee of defendant under § 3698, RSMo 1939.
The reply denied the allegations of contributory negligence, denied that decedent was a statutory employee of defendant, and alleged that the work being done by decedent's employer on defendant's premises was not an operation of the usual business of defendant, and that decedent's employer was an independent contractor.
The evidence favorable to respondents shows the following state of facts: Decedent Walter G. Szofran was a journeyman ironworker in the employ of Robinson Erection Company, which was engaged in structural iron work, including the erection of girders and beams. Decedent's employer had a contract with Century Electric Company to erect chutes, hoppers and support girders in its foundry building. That building was equipped and used for the purpose of making heavy castings by pouring molten iron into molds. To facilitate the lifting and movement of heavy materials and objects an overhead electrically driven movable crane, capable of carrying a 5-ton load, was used. The crane operated on parallel tracks which were located approximately 60 feet apart, mounted about 20 feet above the level of the foundry floor on horizontal 21 inch iron beams which ran east and west the length of the building. These crane track beams were attached to upright supporting columns spaced 20 feet apart. The crane itself consisted of two heavy parallel steel beams, which rested on trucks at each end. Two iron wheels similar to railroad car wheels, only smaller, carried the trucks. The wheels rolled on the tracks and enabled the crane to move from one end of the building to the other to pick up, carry and deposit loads as required. Attached to the underside of the south end of the crane was a cage in which the operator of the crane stood and manipulated the levers which controlled its movements. The crane was equipped with a warning bell operated mechanically by foot by which the operator could issue warnings of the movement of the crane. The maximum speed of the crane was that of an ordinary brisk walking gait of a man, approximately 3 miles per hour. The movement of the electric crane was "pretty quiet." There was other noise in the foundry.
The work in which Robinson Erection Company was engaged was that of attaching iron girders onto the north side of the north row of the supporting columns. Holes were drilled in the columns, in the beams and in lugs which were attached to the beams and columns. After the holes were drilled there were two operations: "hanging the girder" (putting in enough bolts to carry the load), and "tying the girder in" (putting the bolts in the holes and fastening the girder securely with lugs). On the day before the casualty the holes were drilled and the particular girder hung with enough bolts to hold its weight. On the day before *446 the accident the drillers were on top of the crane runway engaged in drilling holes in the columns to hang the girders, working in such a position that they were directly in the path of the crane as it rolled on the tracks. On the day previous to the accident wooden blocks in the shape of a wedge had been placed on the rails to keep the crane from striking the men who were working on or close to the crane runway. They were placed there by Julius Toth, an employee of Robinson Erection Company. The crane hit the blocks two or three times on the day before the accident, before stopping. On the day of the accident the wooden blocks were not at the east end of the runway. The crane operator knew the runway was not blocked that day, and that there was no flagman on duty to warn the employees of Robinson Erection Company working on the crane runway. The person who required that the blocks be taken out was a general foreman of Century Electric Company. On the day of the accident, after the blocks were taken out, Toth and a co-employee called Possum, were drilling holes in the beams. They would step off the track when the crane came along and after the crane had passed would step back on the crane runway and continue with their work. Toth, on top of the rail, could see the operator in the cage except when the crane was "straight out from him." He could see the face, eyes and most of the body of the operator when 20 or 30 feet from the crane.
On the morning of the accident Szofran and his co-worker James M. Wheeler, after sorting out their lugs, went up for the purpose of tying in the girder. Wheeler was underneath the crane track beam sitting on a horizontal 6-inch pipe, about 16 feet above the foundry floor. Szofran was standing on a ladder. The operator of the crane was in his cage with his hands on the controls. The visibility of the operator across the width of the building was good. One could see clearly. Although smoke arose from the operation of pouring molten iron into the molds, that work at the time of the accident had temporarily stopped. There was nothing to prevent the operator from seeing Wheeler. From photographs taken at eye level in the crane cage, looking northeasterly to the crane track run, it is evident that the operator could have seen Szofran and Wheeler in the positions they occupied at the time of the casualty, long before the crane reached them. "They were over the period of pouring and everything was kind of cleared up" but there were men on the foundry floor pushing, pulling, and moving things around. The crane operator was using the crane picking up objects and moving them from one place to another across the area where men were working. In addition to Szofran and Wheeler there were two other Robinson employees working on the crane runway approximately 40 feet west of the place of accident. Wheeler had to wait several minutes until the operator looked in his direction, then he caught his eye and gave the operator the signal by pointing to himself and to Szofran, indicating that Szofran would be working above on the beam and Wheeler below. The operator nodded his head. Wheeler then instructed Szofran to go on top. Szofran went on up after the operator nodded his head, then they started to bolt up, i. e., to put on the lugs or heavy angle irons which are bolted to the columns. Szofran was putting a bolt in from the top. In order to do this it was necessary to have the holes in the angle iron and the columns lined up (in apposition) so that the bolt would go through both holes. Wheeler was facing the column, making contact with the angle iron, reaching up. Wheeler had the lug up there, the bolt in the bottom hole, and was trying to hold it straight so that Szofran could put in the bolt from the top. Szofran was on the top of the girder, reaching down in the column, putting the bolt in. They were working in the space between the track girder and the girder which was being tied in. Although Wheeler did not see Szofran's position he must have been "either laying or reaching down on the crane run or reaching over the girder." After the operator nodded to Wheeler the crane had moved several times although Wheeler paid no attention to him after he went to work. Wheeler *447 heard a groan from above, ducked out right away, leaned out and was looking over the outside. The crane, which had come from the west at a speed of about 3 miles per hour, backed up a few feet and Szofran dropped down into Wheeler's arms. Wheeler held him until help came. Deep gashes were cut in his head and behind each ear. Szofran's head had been crushed between the column and the track of the crane. All the evidence, including that of the crane operator, indicated that no warning of the approach or movement of the crane was given by the operator of the crane, although the operator testified that he had instructions that men were working "up there" on the crane run west of the place of accident and that if he had looked "very close" and if he knew men were working up there he could have seen them.
The first two points raised by appellant (the twin questions whether defendant was guilty of actionable negligence and whether decedent was guilty of contributory negligence as a matter of law) must be resolved against appellant.
From the facts which we have related the jury was entitled to find that a duty rested upon appellant's crane operator to maintain a lookout for Szofran and others working on and about the crane runway and to warn them of the approach of the crane; that the operator was notified that Szofran and his co-employee Wheeler were going to work at or near the place of injury; that Szofran was visible to and could have been clearly seen by the operator; that the operator could have known of the danger to Szofran if he had looked; that the operator did not look, but ran the crane into and against decedent; that he could have warned Szofran of the danger and thereby could have avoided injury but did not do so; that the crane was under the control of the operator and that if he had performed his duty the casualty would not have occurred. This was substantial evidence authorizing the submission of the question of actionable negligence to the jury.
Appellant insists that Szofran was guilty of contributory negligence as a matter of law (1) in placing himself at or near the crane tracks without notifying the crane operator of his presence or intention so to do and (2) in failing to keep a lookout to see the crane and get out of its way. Neither branch of the argument may be maintained successfully. As to (1) appellant says that it was unusual, unexpected and not contemplated that members of the public would get in the path of the crane which was purposely located overhead and near the ceiling of the building. This argument is not related to the facts of the case. Szofran and other employees of Robinson Erection Company were invitees upon appellant's premises pursuant to a contract between appellant and Szofran's employer. The work called for the drilling of holes and the hanging and tying in of girders at and about the crane tracks, which might require these employees to be upon and about the tracks at any particular moment throughout the entire working day. This work had been in progress prior to the day of the casualty and the situation was known to appellant and its crane operator. This gave rise to a duty upon appellant and its employees "to anticipate the presence of the men upon the track and to take such measures as ordinary prudence would dictate in order to prevent injury to them" from the operation of the crane. See Willig v. Chicago, B. & Q. R. Co., Mo.App., 121 S. W.2d 204, loc.cit. 207, Id., 345 Mo. 705, 137 S.W.2d 430. In addition to general notice, Szofran's co-employer Wheeler brought to the crane operator specific notice of the presence and intention of Szofran to work on the crane track by signaling and motioning to him, and the crane operator acknowledged receipt of the information by nodding his head. As to (2) appellant says that the huge crane could and should have been seen by Szofran as it approached and he should have moved out of its way, as others working to the west of him had done that morning, and that Szofran is presumed to have seen that which he could have seen. The rule *448 applicable in this situation was announced in Willig v. Chicago, B. & Q. R. Co., supra, namely, that an employee of an independent contractor lawfully upon the owner's premises, whose presence is to be anticipated by the owner, and who is engaged in the performance of the duties of his employment, "is not in all events to be adjudged guilty of contributory negligence upon the mere showing that he did not look for an approaching train (before going upon the track), but instead the question of whether he may be said to have exercised due care for his own safety is to be considered in the light of the danger he had reason to apprehend, relying, as he would have had the right to do, upon the fact that the railroad company would not itself be negligent in the matter of taking proper precautions to avoid causing injury to him." 121 S.W.2d loc. cit. 208. (Parentheses ours.) The rule that one approaching dangerous tracks must look and listen for danger does not apply with strictness to persons lawfully at work on the tracks. Such person need only keep a lookout reasonably commensurate with the danger and consistent with the faithful performance of his work. At the time he was struck Szofran was engaged in the performance of the duties of his employment, paying attention to the work at hand. He could not watch the movement of the crane and at the same time perform work requiring his close attention. Szofran had a right to assume and rely upon the fact that the crane operator, knowing the nature of the work being done and having been notified that Szofran was going to work on the track and having acknowledged the signal, would take reasonable precautions for his protection, warn him of the approach of the crane in time to get out of its way, and not run into him. Under these circumstances we cannot say that all reasonable minds would be compelled to reach the conclusion that Szofran should have maintained a constant lookout for the approach of the crane, discovered the danger and removed himself therefrom. The evidence leaves room for a reasonable difference of opinion upon the question whether Szofran exercised ordinary care for his own safety.
The case at bar differs materially from the case upon which appellant places its chief reliance, Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911. That decision is based upon the rule that where a duty to look exists the failure of an injured person to see what is plainly visible when he looks constitutes contributory negligence as a matter of law. In that case, however, at the moment of the casualty the attention of the decedent was not confined to the manual performance of the duties of his employment of painting. He was in the course of descending by a system of ladders and catwalks from a point higher than the crane run to the ground floor of the defendant's building, for the purpose of procuring special paint brushes. At the moment he collided with the crane decedent's only concern was his safe descent. Clearly there was a duty on him to maintain a constant lookout for his own safety, and his failure to look in the direction of the approaching crane as he crossed the track precluded his recovery as a matter of law. There were no facts, such as we have here, which relieved the decedent from the duty to maintain a constant lookout for his own safety. The case at bar falls within the doctrine of the cases of Edsberg v. Baldwin Locomotive Works, 240 Pa. 614, 88 A. 8; Smale v. Wrought Washer Mfg. Co., 160 Wis. 331, 151 N.W. 803; and Union Pac. R. Co. v. Blank, 8 Cir., 167 F.2d 291.
For its next point appellant contends that respondents' rights and remedies are governed exclusively by the provisions of the Workmen's Compensation Law and that they are not entitled to prosecute this action, citing section 287.040 RSMo 1949, V.A.M.S. Whether the work in which decedent was engaged, namely, erecting iron beams in the making of structural changes, alterations and repairs at appellant's foundry was "an operation of the usual business" of appellant was submitted to the jury and decided adversely to appellant. Appellant's answer admitted paragraph 4 of plaintiffs' petition, in which it was alleged that Century Electric Company was engaged *449 "in the business of manufacturing castings, electric motors and other products." The work in which decedent was engaged was a highly specialized type of work which requires special tools and workmen of particular skill and training. Appellant had no classification of laborers known as structural ironworkers. While appellant employed certain maintenance workers capable of doing iron work, there was evidence from which the jury was authorized to find that the work being done by decedent at the time of the injury was merely incidental, ancillary and auxiliary to the usual course of the operations customarily carried on upon appellant's premises, Cf. Perrin v. American Theatrical Co., 352 Mo. 484, 178 S.W.2d 332, loc. cit. 334, and that appellant's program of expanding its sand handling capacity by means of erecting iron beams and girders, while essential to the operation of the company's usual business, was not an operation of usual business of manufacturing electric motors, generators and castings. See Rucker v. Blanke Baer Extract & Preserving Co., Mo.App., 162 S.W.2d 345; Cummings v. Union Quarry & Construction Co., 231 Mo.App. 1224, 87 S.W.2d 1039. Furthermore, appellant had employed an independent contractor to do the work rather than use its own immediate employees. See State ex rel. Long-Hall Laundry & Dry Cleaning Co. v. Bland, 354 Mo. 97, 188 S. W.2d 838. A situation requiring this court to find as a matter of law that decedent was a statutory employee of appellant is not presented by this record.
It is next urged that error was committed in excluding the following offer of proof: that appellant's works manager and the foreman of decedent's employer had a conversation on the morning of and prior to the accident in which the work of decedent and the crane operator was discussed; that decedent's foreman had asked for and been granted permission to complete the job on the week-end when the plant was not operating, and had informed appellant's works manager that there would be no interference with the crane by any of the erection company employees, including decedent and those working with him on that day; that appellant and its employees could run the crane freely that day; that the men would work outside of the crane runway; and that appellant relied upon that statement. The offer of proof was properly rejected for the reason that it did not contain the necessary connecting evidence that appellant's crane operator was notified of the understanding and that the new arrangement was communicated to Szofran. Appellant would not be relieved of its duty to maintain a lookout for decedent and his co-workers by a secret and undisclosed understanding that those employees should not thereafter occupy a certain portion of its premises. Nor would decedent be deprived of the benefit of his status as an invitee by a new arrangement prohibiting his right to work on the crane track runway unless he remained in the prohibited area after notice of the prohibition. Decedent had no knowledge of the agreement entered into between his foreman and appellant's work manager. Appellant had no right to assume that this information was communicated to decedent by his foreman and cannot absolve itself from the effect of its own negligence by relying upon someone else to perform a duty which devolved upon it. Dobson v. Otis Elevator Co., 324 Mo. 1147, 26 S.W.2d 942, Key No. 9. And if it was negligence on the part of decedent's foreman to fail to notify decedent to suspend work on the girders, such negligence is not to be imputed to decedent so as to defeat recovery predicated on appellant's negligence, 65 C.J.S., Negligence, § 166, page 806, because decedent had no control or right to exercise control over the conduct of his foreman.
Appellant further urges that there was no competent legal evidence showing pecuniary loss to plaintiffs as a result of the death of their son. Sufficient evidence to satisfy the requirements of the law in this respect is found in the testimony of John Szofran, father of decedent, as follows: Walter Szofran, age 21, single, lived on a farm with his parents and performed chores for them while living with them. During a tour of duty in the armed services he sent money home and invested in bonds which were issued in the names of his parents. Thereafter while attending a school under the G. I. Bill of Rights he *450 periodically sent money to his parents. Later while working as a journeyman ironworker he gave his pay checks to his mother, who cashed them and returned to him enough money to meet his necessary expenses. The parents kept the rest of the money. In the year 1947 he earned and turned over to his parents the net sum of $1,347.33. He had worked three weeks after school dismissed in 1948. For the week previous to his death he earned a net amount of $119.20. He had good habits and was a hard worker, and was devoted to his parents, who were aged 78 and 71 years, respectively.
Error is also assigned in the admission of evidence that decedent was "devoted" to his parents. While recovery may not be had for loss of comfort, society and love of a child in a wrongful death action, Pyle v. Columbia, Mo.App., 263 S.W. 474, the fact that the son was devoted to his parents is admissible in evidence (when coupled with evidence that he turned over his earnings to his parents and that they benefited thereby) for the reason that it bears upon the likelihood of the son's future remittance of such benefits to the parents had not his life been extinguished by the wrongful act of the defendant.
Finally, appellant urges error in the refusal of its Instruction No. 3, which in substance directed the jury to decide first the question of liability and instructed that until that question had been determined the jury had no right to consider the amount, if any, of plaintiffs' damages. While the giving of the instruction would have been proper, West v. St. Louis Public Service Co., 361 Mo. 740, 236 S.W.2d 308, it was a cautionary instruction the giving or refusal of which, in the absence of some showing of abuse, rests within the discretion of the trial court. Mollman v. St. Louis Public Service Co., Mo.App., 192 S.W.2d 618.
The judgment should be affirmed, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, affirmed.
BENNICK, P. J., and ANDERSON and IVAN LEE HOLT, Jr., JJ., concur.
On Motion for Rehearing or to Transfer to Supreme Court
HOUSER, Commissioner.
In its motion for rehearing or transfer to the Supreme Court appellant assails that part of the original opinion approving the action of the trial court in rejecting the offer of proof that appellant's works manager and the foreman of decedent's employer agreed that Robinson Erection Company employees would not work on the crane runway on the date of the accident but would work elsewhere, and would not interfere with the free operation of the crane on that day. Although we have re-examined the question in the light of the several arguments advanced by appellant, we remain of the opinion that the proof offered was not admissible in the absence of evidence that the decedent and the crane operator were informed of the agreement.
Decedent and the other employees of Robinson Erection Company were working on appellant's crane runway on the day prior to the accident by permission granted in the written agreement between appellant and the erection company. Decedent therefore was an invitee. More specifically, he was a licensee with an interest, Carroll v. Wagner Electric Mfg. Co., Mo. App., 211 S.W. 705, a business invitee, to whom appellant owed the duty to exercise ordinary care for his safety. Pritt v. Terminal R. R. Ass'n of St. Louis, 359 Mo. 896, 224 S.W.2d 119.
Decedent had a right to rely on the fact that his status as a business invitee would continue until the work was concluded or he was notified to the contrary. He could assume that appellant would continue to perform its duty to him until such time as the license should be revoked, the permission withdrawn, and until the decedent was notified thereof. Just as there is a duty on the owner of premises to *451 warn the servant of an independent contractor of a dangerous condition known to the owner but of which the servant is ignorant, Streicher v. Mercantile Trust Co., Mo.Sup., 31 S.W.2d 1065, keynote 4, loc. cit. 1068, so there is a duty on the owner of premises to warn such servant of a change in the working conditions which make his work more hazardous or of a withdrawal of permission to use a particular portion of the owner's premises at a particular time. If the servant continues to work in a prohibited area or at a prohibited time after receiving such a warning, he becomes a trespasser as to whom the owner would no longer owe the duty to exercise ordinary care but as to whom he would owe only the lesser duty not to intentionally or wantonly injure him. Absent such notice, however, his status as invitee and licensee would not be converted into that of trespasser by secret and uncommunicated agreement between decedent's superior and the owner's manager, nor would his status as such be affected thereby.
Likewise, the duty of care owed by the operator of the crane would not be affected by that agreement unless it was communicated to the crane operator. On the day before the fatal accident the crane operator had seen decedent and other employees of the independent contractor working on the crane runway. He had knowledge of their presence and of their right to work at that place. His resulting duty to exercise ordinary care toward these workers would not be any different on the day of the accident from what it was on the day prior thereto, in the absence of notice to the crane operator of a change in the prevailing conditions. It would not be lessened or affected by a secret and undisclosed understanding that on a certain day the decedent would not be working in the place of danger. Not until he was informed of the agreement would the circumstances and the requirements of ordinary care differ from the circumstances obtaining and the degree of vigilance exacted prevailing on the day prior to the accident.
The offer of proof was incomplete and it was not error to exclude it.
Appellant also reiterates its position that decedent was guilty of contributory negligence as a matter of law under the case of Kobusch v. Ruberoid Co., 355 Mo. 48, 194 S.W.2d 911, but what we said in the original opinion is sufficient to dispose of this question.
The Commissioner, therefore, recommends that the motion for rehearing or in the alternative to transfer to the Supreme Court be overruled.
BENNICK, P. J., and ANDERSON and IVAN LEE HOLT, Jr., JJ., concur.